IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

PHILLIP MARK WILSON,            )
                                )
    Plaintiff,                  )
                                )
v.                              )          CASE NO. 1:20-CV-65-KFP
                                )
KILOLO KIJAKAZI,[1]             )
Acting Commissioner of Social Security,   )
                                )
    Defendant.                  )

**MEMORANDUM OPINION AND ORDER**

## I.    PROCEDURAL HISTORY

Plaintiff Phillip Mark Wilson filed this action under 42 U.S.C. § 405(g) seeking judicial review of an adverse decision of the Commissioner of Social Security after the Administrative Law Judge ("ALJ") denied his claim for Supplemental Security Income following a hearing. The Appeals Council denied review on December 2, 2019. R. 1–6. Thus, the ALJ's decision became the final decision of the Commissioner. After careful review of the record, the Court concludes the Commissioner's ruling is due to be REVERSED and REMANDED.

## II.    STANDARD OF REVIEW

A court's review of the Commissioner's decision is narrowly circumscribed, and its function is to determine whether the Commissioner's decision is supported by substantial

---

[1] Kilolo Kijakazi is now the Acting Commission of Social Security and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *Wilson v. Barnhart,* 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. [The Court] may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is de novo." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III.   THE ALJ'S FINDINGS

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has an impairment that meets or equals a listing and meets the duration requirements; (4) can perform his past relevant work in light of his residual functional capacity; and (5) can make an adjustment to other work in light of his residual functional capacity, age, education, and work experience. *Evans v. Comm'r of Soc. Sec.,* 551 F. App'x 521, 524 (11th Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)). Here, at step two of the sequential evaluation process, the ALJ found that Plaintiff had the following severe impairments: right shoulder disorder, lumbar degenerative disc disease, intermittent tremor, bipolar disorder, anxiety, chronic pain syndrome, and substance use disorder. R. 23. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. R. 23–25. As relevant

here, the ALJ next found that Plaintiff had the residual functional capacity ("RFC") to

perform light work:

> except he can frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch and crawl. He can frequently hand and finger with both upper extremities. The claimant's ability to understand, remember, and apply information is limited to performing simple and routine tasks; his ability to use judgment is limited to simple work-related decisions; he can interact with supervisors, coworkers, and the public occasionally; and he can deal with occasional changes in a routine work setting.

R. 25.  At step five, when considering Plaintiff's age (51), education, work experience, and

RFC, the ALJ concluded that jobs existed in significant numbers in the national economy

that Plaintiff could perform. R. 34. Therefore, Plaintiff was not disabled. R. 35.

## IV.    DISCUSSION

Plaintiff argues the following three issues before this Court: (1) the ALJ's finding

of Plaintiff's RFC is not supported by substantial evidence; (2) the ALJ erred by excluding

evidence from the record contrary to his duty to investigate the facts and develop arguments

for granting benefits; and (3) the ALJ demonstrated bias. Doc. 12 at 1.

### A.    Exclusion of Evidence Was Inconsistent with Developing a Full Record.

The Court will first address Plaintiff's argument that the ALJ did not perform his

duty to fully investigate the facts and develop the record, which is based on the ALJ's

exclusion of certain photographs from evidence. At the hearing, the ALJ made reference

to photographs of Plaintiff and his home that had been sent in but not exhibited. R. 44. He

described the submission this way: "Back in August 2018 somebody had sent in some

pictures of the claimant's house . . . and they've not been exhibited and the reason why is

because the last two pages are of the claimant. One is of him bending over showing what looks like his butt to the camera and then the second one is him standing up smiling showing his butt to the camera." R. 44. It appears the submission had multiple pages with at least two pages with photographs of Plaintiff's nude rear-end. However, the record is unclear as to how many other photographs were contained in the submission or what those photographs depicted beyond the generic description of "claimant's house." It is also unclear whether the photographs of Plaintiff's house are the same as the photographs of Plaintiff's rear, how many total pages were submitted, and what, if anything, is shown on any of the pages. Only the rear-end revealing "last two pages" are described with any specificity.

Plaintiff informed the ALJ that he did not know how the photographs ended up in the file. Plaintiff's non-attorney representative confirmed she had not submitted them and suggested that Plaintiff's mother may have submitted them. R. 44–45. In any event, neither the Plaintiff nor the representative argued that the two pages with the rear-end photographs—or any of the other nondescript pages of the submission—were relevant to the disability claim. R. 43–45. However, it is unclear whether they were allowed to examine the photo package in total to assess what every page depicted and whether it related. *See id*.

Plaintiff's argument that the ALJ failed to develop a full and fair record by excluding the photographs is, necessarily, based on speculation. As the representative did at the hearing, Plaintiff now speculates that Plaintiff's mother may have provided the photos as evidence to support statements she made about Plaintiff's mental health condition. Doc. 12

at 11. Of course, without a clear understanding of what was in the photographic submission, all Plaintiff can do is speculate. A letter from Plaintiff's mother, which was exhibited, details Plaintiff's mood swings, including his "rage," and the unkempt condition of his home, among other things, it and states that "[p]hotos [are] available." R. 272–73. Plaintiff argues the photographs "would demonstrate [Plaintiff's] inability to perform daily chores and also demonstrate his irrational and inappropriate behavior, which would have a direct bearing on his ability to maintain employment." Support for this contention could have been extrapolated at the hearing had the photos been exhibited, but, because it was not, the contention remains uncertain.

The ALJ has an obligation to "develop a full and fair record" and to "'carefully weigh the evidence, giving individualized consideration to each claim.'" *Edward ex rel. J.P. v. Astrue*, No. 2:10-CV-165, 2012 WL 253982 (M.D. Ala. Jan. 27, 2012) (quoting *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996)); *see also Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Indeed, the administrative process is designed as one that is inquisitorial, not adversarial. *See, e.g. Welch v. Berryhill*, No. 2:16-CV-899-TFM, 2018 WL 991545, at *5 (M.D. Ala. Feb. 20, 2018) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981); *Small v. Barnhart*, 329 F. Supp. 2d 1272, 1277 (N.D. Ala. 2004)). This design allows for robust development of a record (for and against a disability finding) from which a decision is made that is then subject only to narrow review. *See, e.g., Miles*, 84 F.3d at 1400 (stating a court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner" but "must defer to the Commissioner's decision if it is supported by substantial evidence"). Therefore, when there

are evidentiary gaps that result in prejudice, remand for further development of the record is appropriate. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995).

While the ALJ has a duty to develop the record before determining that a claimant is disabled, that duty is not so broad as to trigger an obligation to open the flood gates to admit anything that is submitted. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) ("The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified. Reversal of his decision, however, is appropriate only if the applicant shows that he was prejudiced."); *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) ("In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. . . . An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). Other than the mere fact that the photographs in Plaintiff's case were submitted by an unknown person, there was no explanation or description offered at the hearing to connect the submission to the claim for disability. It may be that the photographs could have been exhibited in redacted form to omit the offensive images and allow the remainder; however, no argument for redaction was made, and the ALJ made no offer to remediate the offensive submission so that all or part of it could be exhibited. R. 43–45. Accordingly, any conclusion that the record is now incomplete, inadequate, ambiguous, or otherwise deficient would be based on speculation. *See Mayes*, 276 F.3d at 459–60 (holding that the obligation to develop the record "is triggered only when there is

6

ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

evidence").

Exclusion of the photographic submission alone does not support a finding of

prejudice requiring remand. However, when that exclusion is considered in light of other

oddities in the factual development, the breadth of the record—or lack thereof—is shown

in a different light. For instance, the ALJ placed at least one additional cap on development

of the record. Not long after chastising Plaintiff for allowing the nude photographs to be

submitted (a submission about which Plaintiff disclaimed any knowledge) and before

hearing any medical expert testimony on Plaintiff's mental health at the hearing, the ALJ

made clear that he would not accommodate any mental health disorders in the RFC. The

colloquy in which the ALJ all but foreclosed this possibility follows:

> ALJ: I'm saying that you're going to get that whenever he's been diagnosed
> with drug and alcohol disorders before he was diagnosed with bipolar
> disorder and the bipolar diagnosis came during the active time of drug abuse.
> No medical expert is going to come in here and say that there's a valid
> diagnosis if it's in a period of active drug and alcohol use.
>
> REP: I won't go - -
>
> ALJ: Regardless, I'm not going to accommodate his mental health in the
> RFC. I'm not going to find as of what he's told me about today in my review
> of the records, though, I'm likely not going to find his mental health issues
> disabling but you're welcome to go forward and develop that if you'd like.

R. 72; *see also* 48–49. Perhaps not surprisingly, after being faced with the ALJ's adverse

conclusion before making the argument and fully presenting evidence, Plaintiff's

representative cowed in response, "I won't go further at this point. I'm finished." R. 72.

The ALJ subsequently tamped down his premature conclusion by telling the representative

not to take his statements as an indication that he should quit questioning the claimant, but that was the effect. R. 72. The representative explained, "[T]he last thing I was trying to develop was the bipolar disorder and this is a claimant who had intermittent treatment for bipolar, alcohol use and has a long history . . . . I was going to argue . . . that this substance use is secondary to the bipolar . . . . [and with his physical problems] the combination would restrict him to sedentary [work] **so I don't have any more questions at this point**." R. 72–73 (emphasis added). Thus, by stating that he would not accommodate Plaintiff's mental health in the RFC, the ALJ all but shut-down Plaintiff's ability to present additional evidence on Plaintiff's mental health.

It is true that a party seeking disability benefits bears "the burden of proving that [he] is disabled, and, consequently, [he] is responsible for producing evidence in support of [his] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam). Nevertheless, the ALJ "has the responsibility 'to investigate the facts and develop the arguments both for and against granting benefits.'" *Sneed v. Berryhill*, No. 3:15CV591-SRW, 2017 WL 1230849, at *6 (M.D. Ala. Mar. 31, 2017) (remanding and noting that "the ALJ's insufficient or incomplete questions to the plaintiff on key factual issues . . . [fell] well short of the ALJ's duty to develop a sufficient record from which to render a decision based upon substantial evidence") (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citing *Richardson*, 402 U.S. at 400–01)). The extent to which the disallowed photographs might have further developed the record as to Plaintiff's mental health (e.g., as his representative suggested, that substance abuse was secondary to bipolar) is anyone's guess. The ALJ's failure to elicit information and testimony on the subject of Plaintiff's mental health and

his prohibitive discouragement of development on the subject was counter to his obligation to develop the record fully and fairly. The fact that Plaintiff's diagnosed bipolar disorder was discounted by the ALJ based, at least in part, on a history of substance abuse (*see* R. 32–34), without first allowing for full development of the mental health issue at the hearing, together with the exclusion of the photographic submission,[2] indicates Plaintiff may have been prejudiced by the circumscribed record. Had the impairment required additional limitations in the RFC, the disability outcome may have been different. The Court's conclusion does not imply that there should be a finding of disability based on Plaintiff's mental health, but the record should be robust so it is apparent on review that the ALJ's conclusion on that issue, whatever it may be, is supported by substantial evidence.

**B.    The Record Does Not Support a Finding of Bias.**

Plaintiff argues that the ALJ's refusal to allow development of the record, as described above, demonstrates bias. Doc. 12 at 11. However, bias is not apparent on this record. To make such a finding would require a leaping conclusion that the ALJ disallowed the mental health evidence because he is biased against all claimants who allege mental health disorders or who have a substance abuse history, and this record does not support that leap. *See Welch*, 2018 WL 991545, at *7 ("Ultimately, the Court cannot conclude that

---

[2] Plaintiff contends there are other gaps in the evidentiary record, including records from two providers, Dale Medical in Ozark and Dale Medical Center ER, from which no records were exhibited. Doc. 12 at 13. Interestingly, the ALJ noted certain gaps in the medical records, including the absence of records from an evaluation by Dr. Kesserwani, a neurologist, in June 2017; evidence that Plaintiff requested not to see Dr. Tessema, a psychiatrist, in December 2018 (indicating a dislike or distrust of the provider) but no evidence of any prior treatment or evaluation by this doctor; and the absence of records from an appointment with Dr. Samuy, a psychiatrist, in April 2017. R. 31–32.

substantial evidence supports the ALJ's determination because the ALJ failed to fully develop the record. Whether or not this is a result of bias, the Court cannot fully determine."); *compare Small*, 329 F. Supp. 2d at 1278 (remanding and ordering Commissioner to properly develop the record on issue of alleged general bias where plaintiff submitted copies of decisions to Appeals Council showing ALJ's disproportionate denials of disability claims but Appeals Council provided no rationale to support its conclusion that ALJ was not biased). Thus, while the Court does require remand for development of mental health-related evidence, it cannot on this record conclude that the ALJ's actions demonstrate bias.

### C.     The RFC is Not Supported by Substantial Evidence.

While the failure to develop the record alone requires remand, the Court makes the additional finding that remand is required because the RFC is not supported by substantial evidence. As noted above, the ALJ determined that Plaintiff's right shoulder disorder presented a severe impairment. R. 23. Despite this severity finding, the physical limitations in Plaintiff's RFC were only manipulative and postural in that they limited his performance of light work to occasionally climbing ladders, ropes, and scaffolding. R. 25; 31. The RFC did not, for example, include limitations for reaching, carrying, bilateral movement, or cross-body movement.

"[A] severe impairment limits significantly a claimant's ability to do basic work activities." *Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898–99 (11th Cir. 2010) (citing *Crayton* v. *Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). The record reflects that Plaintiff had a torn right rotator cuff (R. 283) and shoulder pain (R. 292, 348, 377).

An October 2018 examination shows that Plaintiff had "prominent acromioclavicular joint which [was] tender to touch," "pain with cross-body maneuver," 4/5 rotator cuff strength, and "tenderness of Codman's point as well as bicipital groove." R. 348. The radiographs of the impacted shoulder revealed "significant degenerative changes with hypertrophy of the acromioclavicular joint." R. 349. Because Plaintiff did not have insurance, his treatment options were limited, but he did receive injections to relieve pain. R. 349. At the hearing, Plaintiff testified about the pain and limitations associated with his right shoulder, including limitations in carrying weighted objects. R. 50, 58–60, 67. Despite this medical evidence and the subjective testimony, the ALJ's decision does not address his evaluation of Plaintiff's subjective shoulder symptoms or the extent to which the ALJ credited or discounted these symptoms based on a credibility determination. *See Raduc*, 380 F. App'x at 898–99 *(*"[I]it is unclear whether and to what extent the ALJ discounted Raduc's testimony about her IBS symptoms.") (citing *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (stating that testimony of subjective complaints must be accepted as true if ALJ fails to articulate reasons for rejecting it)).

Although the ALJ noted Plaintiff's suspected rotator cuff tear, mildly restricted range of motion of bilateral shoulders, and reported pain and weakness with overhead activity and cross-body maneuver, the ALJ included no related limitations in the RFC. *See* R. 23, 27–28. Critically, the ALJ's analysis does not discuss the shoulder's effect on Plaintiff's ability to perform the light work assigned by the RFC. *See* R. 25–35. This unexplained dismissal of any impact by the severe shoulder impairment leaves it unclear how the impairment relates to the RFC and Plaintiff's ability to perform light work. *See*

*Raduc*, 380 F. App'x 896, (remanding where limitations in RFC were postural and ALJ dismissed IBS-related limitations without discussing how IBS might affect claimant's ability to perform job; because ALJ failed to meaningfully conduct proper legal analysis of the effect of IBS on the RFC, substantial evidence did not support finding that claimant could return to past relevant work). Because the ALJ did not explain his consideration of Plaintiff's right shoulder impairment on his RFC, the Court cannot conclude that substantial evidence supports the finding that Plaintiff can perform the range of light duty work designated in the RFC. The Court is left pondering why the ALJ did not include limitations in the RFC related to the severe shoulder impairment or, if he did, how the RFC's limitations address the shoulder impairment. Therefore, remand is necessary. *See Winschel*, 631 F.3d at 1179 (reversing and remanding where ALJ failed to provide enough information to let reviewing court know how he came to his decision).

## V.      CONCLUSION

Based on the foregoing, the ALJ's decision is REVERSED and REMANDED with instructions that it be returned to the Commissioner for additional proceedings consistent with this opinion.

DONE this 14th day of October, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE